## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-CR-20133-JAR |
| | ) | |
| XIANG WANG, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM ORDER

This matter comes before the Court on Defendant Xiang Wang's Motion for Judgment of

Acquittal Notwithstanding the Verdict or, in the Alternative, for a New Trial (Doc. 59).  The

Government has responded (Doc. 63), and a motion hearing was held on October 21, 2014.

After reviewing the filings and the arguments submitted at the hearing, the Court is now

prepared to rule.  For the reasons explained in detail below, Defendant's motion for judgment of

acquittal is granted, and his motion in the alternative for a new trial is conditionally denied.

### I.      Background

Defendant is a native of the People's Republic of China.  In December 2013, he was

charged by indictment with willful failure to depart from the United States within ninety days of

a final order of removal, in violation of the Immigration and Nationality Act, 8 U.S.C. §

1253(a)(1)(A).  At trial, the Government's case in chief consisted of four witnesses, including

(1) supervisory asylum officer Arthur Hale, (2) special agent Andrew Zumhofe, and (3)

deportation officer Cory Terrell.

1

Officer Hale testified to certain documents in Defendant's alien file.  Those documents tended to show that Defendant arrived at John F. Kennedy International Airport in August 1994 using an alias and a fraudulent Chinese passport.  Airport immigration inspectors discovered the false passport, but admitted Defendant to the United States for the purpose of attending an exclusion hearing before an immigration judge.  In January 1995, the immigration judge denied Defendant's application for asylum and ordered him to be removed from the country.  The Board of Immigration Appeals (BIA) dismissed Defendant's appeal from that order.  In the years that followed, Defendant filed two motions to reopen his case: first in March 1997, then in April 2007.  The BIA denied both motions, issuing its final order of removal on December 19, 2007.  A Form I-296, included in Defendant's alien file, indicates that no immigration official had observed Defendant leave the country within ninety days of the December 2007 removal order.

Special Agent Zumhofe encountered Defendant on November 5, 2013, during a search of Defendant's apartment in Olathe, Kansas.  The search uncovered several documents belonging to Defendant, including a social security card, a W-2 form, some paychecks, driver's licenses for Kansas and New York, a Chinese passport, and the Form I-94 issued to Defendant upon his arrival in the United States in August 1994.[1]  Defendant was taken into custody immediately after the search and was released on recognizance that same day.

Officer Terrell became involved with the case on some date after the apartment search.  He testified to arranging for Defendant's eventual removal from the United States.  Specifically, Officer Terrell contacted the Chinese consulate in Chicago and requested travel documents authorizing Defendant's return to China.  After receiving a copy of Defendant's passport, the

---

[1]*See* Gov't Exs. 16–28.

consulate approved the request and issued Defendant's travel documents.  Officer Terrell explained that the consulate would issue such documents only upon proof of Defendant's Chinese citizenship.

Defendant did not testify or present a witness on his behalf.  During cross-examination of Officer Hale, however, defense counsel elicited statements on China's family-planning policy.  Officer Hale testified that the policy has generated forcible abortions and sterilizations to prevent families from having more than one child.  He also acknowledged that Defendant's later motion to reopen was based on the birth of Defendant's second child, which Defendant feared would result in his forcible sterilization upon returning to China.  The cross-examination appears designed to support Defendant's argument that his failure to depart, if unlawful, was excusable because he acted under duress or coercion.[2]

At the close of the Government's case in chief, Defendant moved for a judgment of acquittal for insufficiency of the evidence under Federal Rule of Criminal Procedure 29.  The Court took that motion under advisement.  The jury then convicted Defendant as charged on July 23, 2014.  Defendant now renews his motion for judgment of acquittal and moves, in the alternative, for a new trial.

## II.     Motion for Judgment of Acquittal

### A.     *Standard of Review*

In resolving Defendant's challenge to the sufficiency of the evidence, the Court must determine whether, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

---

[2]*See* Doc. 65 at 13 (instructing the jury on Defendant's claimed defense of duress or coercion).

doubt."[3]  The Court must "resolve any possible conflicts in the evidence in favor of the

government and assume that the jury found that evidence credible."[4]  The evidence supporting

the conviction must be substantial, but it "need not conclusively exclude every other reasonable

hypothesis and it need not negate all possibilities except guilt."[5]

A conviction under § 1253(a)(1)(A) requires proof of the following elements: (1)

Defendant was an alien at the time alleged in the Indictment; (2) a final order of removal was

outstanding against Defendant; (3) Defendant was deportable under 8 U.S.C. § 1227(a); and (4)

Defendant willfully failed or refused to depart from the United States within a period of ninety

days from the date of the final order of removal.[6]  To meet the statute's willfulness requirement,

Defendant must have known that his failure to depart was unlawful.[7]

**B.     Analysis**

Defendant contends the Government failed to prove the fourth element of the crime

beyond a reasonable doubt, for two reasons: (1) no evidence showed that Defendant knew he

was required to depart within ninety days of the December 2007 removal order, and (2) no

evidence showed that any country was willing to accept Defendant into its territory during the

ninety-day period.  The Court will address each contention in turn.

---

[3]*United States v. McPhilomy*, 270 F.3d 1302, 1307 (10th Cir. 2001) (emphasis in original) (quoting *Jackson v, Virginia*, 443 U.S. 307, 319 (1979)).

[4]*United States v. Doddles*, 539 F.3d 1291, 1293–94 (10th Cir. 2008).

[5]*United States v. Burkley*, 513 F.3d 1183, 1188–89 (10th Cir. 2008) (citation and quotation marks omitted).

[6]*See* 8 U.S.C. § 1253(a)(1)(A).

[7]*See Bryan v. United States*, 524 U.S. 184, 191–92 (1998) ("As a general matter, when used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose.'  In other words, in order to establish a 'willful' violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful.") (internal quotation marks and citation omitted); *Heikkinen v. United States*, 355 U.S. 273, 278 (1958) (finding a "willful" act under § 1253(a)'s predecessor statute to be one undertaken with a "bad purpose").

1.     Knowledge of Unlawful Conduct

Defendant argues, first, that the Government failed to prove that Defendant knew he was required to depart within ninety days of the BIA's 2007 removal order.  Defendant was not present when the BIA published the order, and no evidence indicates that Defendant received notice of the order by mail.  Thus, according to Defendant, the record does not show that Defendant knew about the BIA's decision at all, much less that the decision required him to leave the United States within ninety days.  And absent proof of such knowledge, the jury could not reasonably find that Defendant acted "willfully"—that is, that he knew his remaining in the country was unlawful.

The Court views the record differently.  The Government's exhibits show that Defendant was represented by an attorney at his removal proceedings and on every motion he filed with the BIA, including the motion that resulted in the 2007 removal order.[8]  Thus, though Defendant was not physically present when the BIA rendered the final order of removal, a rational juror could have inferred that Defendant's attorney fulfilled her duty to inform her client of the decision and its ramifications.  Moreover, Defendant's appeal from the 1995 removal order, and his subsequent motions to reopen after that appeal was dismissed, suggest he understood that the removal proceedings affected his ability legally to remain in the country.  The jury would have been reasonable to conclude that Defendant, at some point in the six years following his second motion to reopen, sought to learn of the BIA's disposition on that motion and then remained in the country despite knowing his grace period to depart had expired.  The Court finds sufficient evidence to warrant the jury's determination that Defendant knew his remaining in the country

---

[8]*See* Docs. 9–14.

was unlawful.

2. Ability to Depart

Defendant next contends the Government failed to prove his ability to comply with the

statutory requirement to depart. Defendant refers the Court to the Supreme Court's decision in

*Heikkinen v. United States*,[9] which reversed an alien's conviction under a predecessor statute of

§ 1253(a)(1)(A). In that case, the Court held that a conviction for willful failure to depart

required proof that another country was willing to accept the alien into its territory:

> The crucial element of the crime charged in the first count is that
> petitioner "did willfully fail to depart from the United States"
> within six months from the final deportation order of April 9,
> 1952. A thorough review of the record discloses no evidence that
> any country was willing, in that period, to receive petitioner.
> There can be no willful failure to depart until "the country willing
> to receive the alien is identified." It therefore cannot be said that
> there was any evidence to support the jury's finding that petitioner
> "did willfully fail to depart from the United States" within six
> months from the deportation order. The evidence on Count 1 is
> thus insufficient to support the verdict, and the judgment of
> conviction thereon must fall.[10]

Defendant argues that in this case, as in *Heikkinen*, the Government presented no evidence that

any country was willing to receive Defendant.

The Government suggests *Heikkinen* is inapplicable in this case for two reasons. First,

the cases are factually distinguishable: the *Heikkinen* petitioner relied on immigration officials'

assurances that his travel arrangements would be made for him and that he would be notified

when he needed to take further actions to effect his departure. There was no similar reliance by

Defendant here. Second, the *Heikkinen* decision took place in the late 1950's and involved the

---

[9]355 U.S. 273, 276 (1958).

[10]*Id.* at 276 (citation omitted).

prosecution of an alien who was deportable only because of his former membership in the Communist Party of the United States. *Heikkinen*, then, may be viewed as a reaction to the political tensions prevailing in the country at that time, and no longer applies in this post-Cold War era.[11]

The Court is unpersuaded. Though the *Heikkinen* Court found it significant that authorities had promised to arrange for the petitioner's departure, the Court relied on those representations only to reverse the petitioner's conviction on the second count charged—the count for willful failure to make timely application for travel documents.[12] On the count charging willful failure to depart—the crime at issue in this case—the *Heikkinen* Court deemed sufficient for acquittal that the prosecution presented no evidence of a country willing to receive the petitioner.[13] That is the same ground for acquittal Defendant asserts here. Thus, the factual distinction noted by the Government does not limit *Heikkinen*'s application to this case. Further, the Court cannot disregard *Heikkinen* on the basis that Cold War-era political tensions may have affected its holding. Regardless of the decision's historical context, this Court must consider *Heikkinen* binding until the Supreme Court overrules it.[14] There is no legitimate basis to conclude otherwise, as the predecessor statute at issue in *Heikkinen* is similar in all material

---

[11]The Government offered this latter argument at the motion hearing held October 21, 2014.

[12]*See Heikkinen*, 355 U.S. at 279–80.

[13]*See id.* at 276 ("A thorough review of the record discloses no evidence that any country was willing, in that period, to receive petitioner. There can be no willful failure to depart until the country willing to receive the alien is identified.") (internal quotation marks and citation omitted).

[14]Indeed, federal courts continue to rely on *Heikkinen*. *See, e.g.*, *United States v. Diallo*, 569 F. App'x 221, 222 (5th Cir. 2014).

respects to § 1253(a)(1)(A), applicable here.[15]  The only relevant difference between the earlier statute and the current one is the length of the time period allowed for departure: the earlier statute allowed six months to depart, while the current statute allows only ninety days.  Because the statutory context applicable in *Heikkinen* has not materially changed, the Court must apply *Heikkinen*'s willingness-to-receive rule here.

Having determined that *Heikkinen* governs, the Court must now decide what *Heikkinen* required the Government to prove at trial.  The issue in *Heikkinen* was whether the prosecution presented evidence that any country was willing to receive the petitioner within the six-month period then allotted for an alien's departure under § 1253(a)(1)(A)'s predecessor statute. Defendant therefore asserts—and the Government does not dispute—that *Heikkinen*, if applicable in this case, required the Government to show that another country was willing to accept Defendant within the ninety-day departure period now established by § 1253(a)(1)(A). The Court disagrees.  In *Heikkinen*, the six-month departure period was apparently the only time period for which the indictment charged a violation of the statute; it was for that reason that the Court found the statutory departure period crucial.[16]  Here, by contrast, the Indictment charged that Defendant's willful failure to depart *continued beyond* the ninety-day departure period, "to

---

[15]*Heikkinen* involved a conviction under 8 U.S.C. § 156(c) (Supp. IV 1946) (repealed 1952), a predecessor statute of § 1253(a)(1)(A).  Under both frameworks, if it is impracticable, inadvisable, or impossible to remove a deportable alien to one of the countries designated by statute, the alien may be removed to any country willing to accept the alien.  And both frameworks criminalize an alien's willful failure to depart within a specified time period following a final order of removal.

[16]*See Heikkinen*, 355 U.S. at 276 n.3 ("But this evidence was irrelevant to the issue whether Canada was willing to receive petitioner *during the period covered by the indictment*, and, in fact, counsel for the Government objected to this evidence upon the ground that the Canadian passport did not show Canada's willingness to accept petitioner *within the six months' period* (after April 9, 1952), which is the . . . *period that we are concerned with in this indictment*.") (emphasis added) (internal quotation marks omitted).

on or about December 18, 2013."[17]  Because the Indictment charged Defendant with a continuing

violation of § 1253(a)(1)(A), the Court reads *Heikkinen* to require the following inquiry: whether

the Government presented evidence showing that another country was willing to accept

Defendant within the time period from the date of the final removal order, December 19, 2007,

to the date of the Indictment, December 18, 2013.  The Government contends that China was

willing to accept Defendant in that period, as demonstrated by the direct examinations of Special

Agent Zumhofe and Officer Terrell, and by Defendant's cross-examination of Officer Hale.

   *a.*  *Special Agent Zumhofe*

   Special Agent Zumhofe testified about the documents discovered during the November

2013 search of Defendant's apartment.  One of those documents was a Chinese passport, the

exterior of which is pictured among other items in Government's Exhibit 28.  Defendant asserts

that this passport had expired before the BIA issued its 2007 removal order.  The Government

maintains that the passport was "current and valid," and thus shows China's willingness to

receive Defendant within the relevant time period.

   The record contains no support for the Government's position.  Government's Exhibit 27

shows that Defendant had a passport which expired on August 22, 2006—over a year prior to the

final order of removal.  And Zumhofe's testimony indicates it was this passport that was found

during the apartment search.  Indeed, Zumhofe was asked twice on direct examination whether

Government's Exhibit 27 depicts the passport found during the search; he responded in the

affirmative on both occasions.[18]  He then testified that the passport found during the search is

---

[17]Doc. 1 at 1.

[18]Trial Tr. 222:13–20, 227:15–22, July 22, 2014.

also pictured in Government's Exhibit 28.[19]  At no point did Zumhofe state that the passport he had found was "current and valid" or that he had found any other, unexpired passport during the search.  The evidence presented to the jury thus indicates that Government's Exhibits 27 and 28 picture the same passport, and that the passport expired before Defendant's final order of removal.  That passport, therefore, cannot prove China's willingness to accept Defendant *after* the removal order.

As the Government points out, a second passport was placed in the Court's custody following a pre-trial hearing on January 6, 2014.[20]  The Court does not know how or when the Government first obtained that passport.  But the passport is in Defendant's name and, unlike the first passport, is currently valid: it was issued on January 26, 2011, and expires on January 25, 2021.  Thus, this second passport might have shown that China was willing to receive Defendant between December 2007 and December 2013.  The problem with this passport, however, is that the Government did not present evidence of the passport to the jury.  Though the passport was in the custody of the Court at the time of trial, the jury never saw a copy of that passport and never heard testimony concerning that passport.  The only passport mentioned anywhere in the trial record appears to be the passport that expired in August 2006, and there was no other evidence from which the jury could have inferred that Defendant possessed a currently valid passport.  The jury could not have convicted Defendant based on a current passport without knowing that such a passport existed.

   b.   *Officer Terrell*

---

[19]*Id.* at 223:7–21.

[20]*See* Doc. 17.

The Government next refers the Court to Officer Terrell's testimony. Officer Terrell stated on direct examination that, at some point after the November 2013 apartment search, he procured travel documents authorizing Defendant's return to China. To do so, he sent the Chinese consulate a copy of Defendant's Chinese passport. Officer Terrell does not specify whether he sent the current passport or the expired one. But for the reasons just expressed, neither passport can support the jury's verdict. The jury had no rational basis for concluding that Officer Terrell sent the current passport because there is no evidence in the trial record suggesting that such a passport existed. Though Officer Terrell was able to obtain the travel documents using whichever passport he sent, his testimony suggests that he sent the passport only to help establish that Defendant was a Chinese citizen. An expired but previously valid passport may serve that end; and, given the total absence of trial evidence suggesting Defendant had any other passport, the only reasonable conclusion for the jury to reach was that Officer Terrell sent the consulate a copy of Defendant's expired passport. That expired passport is not evidence that China was willing to receive Defendant after December 2007.

Officer Terrell next explained that the Chinese consulate would issue Defendant's travel documents only upon proof that Defendant was a Chinese citizen. Because the consulate did issue those documents, the evidence indicates that Defendant was a Chinese citizen prior to Officer Terrell's request for the documents. The fact of Defendant's citizenship, however, fails to satisfy the showing required by *Heikkinen*, that is, that China was willing to receive Defendant into its territory. A sovereign state always has the power to refuse to admit its own citizens.[21]

---

[21]It may not have the *authority* to do so, as "international law arguably requires states to admit their own citizens." Justus Reid Weiner & Avi Bell, *The Gaza War of 2009: Applying International Humanitarian Law to Israel and Hamas*, 11 SAN DIEGO INT'L L.J. 5, 25 (2009). That requirement, however, is not universally followed.

The evidence in *Heikkinen*, in fact, showed that the petitioner was a Canadian citizen at the time he was ordered deported from the United States; yet the Court found no evidence that any country, including Canada, was willing to accept the petitioner.[22]  This case is indistinguishable from *Heikkinen* in that respect.  Officer Terrell's testimony showing Defendant's Chinese citizenship therefore fails to show that China was willing to accept Defendant into its territory.

Finally, Officer Terrell's testimony establishes that upon his request, the Chinese consulate issued travel documents authorizing Defendant's return to China.  China was therefore willing to receive Defendant at the time it issued the travel documents.  The relevant inquiry, however, is not whether China was *ever* willing to receive Defendant, but whether it was willing to receive him on or before the Indictment date of December 18, 2013.  As *Heikkinen* makes clear, proof that China was willing to receive Defendant *after* the time period covered in the Indictment is insufficient to show it was willing to receive him *during* that time period.[23]

The record contains no proof that the travel documents were issued prior to the Indictment date.  Officer Terrell did not specify the date on which the travel documents were issued.  His testimony showed only that he became involved with Defendant's case on some unspecified date after the apartment search on November 5, 2013, and that the documents were therefore issued between that date and the trial date of July 22, 2014.  It was not enough, however, for the Government merely to narrow the issue date to sometime in this eight and one-

---

[22]*Heikkinen*, 355 U.S. at 274–76; *see also* Reply Brief for Petitioner, *United States v. Heikkinen*, 355 U.S. 273 (1958) (No. 89), 1957 WL 87076, at *4 ("Nor is there any merit to the suggestion of the government, that the petitioner's conviction of a failure to depart can be supported by the evidence that he was a Canadian citizen.") (citation omitted).

[23]*See Heikkinen*, 355 U.S. at 276 n.3 ("There was evidence that after expiration of the period of six months from the issue of the deportation order on April 9, 1952, petitioner obtained a passport to Canada.  But this evidence was irrelevant to the issue whether Canada was willing to receive petitioner during the period covered by the indictment.").

half month time frame; the Government, instead, was required to show that the documents were issued sometime during the first forty-three days of that time frame—before December 18, 2013. But the Government presented no evidence showing, or from which it could possibly be inferred, that the travel documents were issued in the period before December 18 and not the period following it.  Though the Court views the evidence in the light most favorable to the Government, the evidence thus viewed shows a far greater likelihood that the travel documents were issued in the seven-month period between the Indictment and the trial, rather than the one and one-half month period between the apartment search and the Indictment.  Absent some additional evidence that may conceivably shift the balance of probabilities, any rational juror would retain a reasonable doubt that the documents were issued in the shorter, earlier time period prior to the Indictment.  That view is supported in this case, moreover, by the several steps necessary to procure the travel documents.  Officer Terrell testified that he had to gather records sufficiently identifying Defendant as a Chinese citizen and then make an official request to the Chinese consulate in Chicago; the consulate then had to review the records, verify Defendant's identity and Chinese citizenship, make travel arrangements for his return to China, and send the travel documents to Officer Terrell.  The Government presented no evidence suggesting that this process could have been completed in the short period from November 5 to December 18, much less that the process actually was completed during that period in this particular case.  The Court finds insufficient evidence to warrant the conclusion that the consulate issued Defendant's travel documents before the Indictment date.

      *c.*    *Officer Hale*

      The Government also contends that Defendant never raised a question about the country

to which he would depart.  Defendant, in fact, built his duress-or-coercion defense on the premise that he would return to China if removed from the United States.  To that end, Defendant cross-examined Officer Hale at length about China's family-planning policy and Defendant's fear of forcible sterilization if returned there.  But even if the record shows that Defendant expected to be removed to China, that evidence does not show that the Chinese government was willing to accept Defendant.  The latter is the showing *Heikkinen* requires.

After reviewing the record, the Court finds no proof that China was willing to accept Defendant into its territory within the time period covered by the Indictment.  Thus, under *Heikkinen*, there was insufficient evidence to support the jury's conclusion that Defendant willfully failed or refused to depart from the United States within ninety days of his final order of removal.  Defendant's conviction under § 1253(a)(1)(A) must be set aside.

### III.   Alternative Motion for a New Trial

Under Federal Rule of Criminal Procedure 29(d)(1), "[i]f the court enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed."[24] Because the Court grants Defendant's motion for judgment of acquittal, it must conditionally rule on Defendant's alternative motion for a new trial.

The Court conditionally denies Defendant's motion for a new trial.  The Court's sole basis for setting aside the conviction is its determination that the Government presented no evidence that any country was willing to receive Defendant within the time period covered by the indictment.  The Court concludes that *Heikkinen* requires such evidence in order to sustain a

---

[24]Fed. R. Crim. P. 29(d).

conviction under § 1253(a)(1)(A).  If it is later decided, however, that *Heikkinen* does not apply to this case, or that the Government presented sufficient evidence to meet the showing required by *Heikkinen*, the interests of justice do not require a new trial.  Aside from the proof required by *Heikkinen*, the Government presented sufficient evidence to support the jury's verdict beyond a reasonable doubt.  Defendant does not assert that the trial otherwise deprived him of due process or contained any other error.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Judgment of Acquittal Notwithstanding the Verdict is **granted.**

**IT IS FURTHER ORDERED BY THE COURT** that Defendant's Motion in the Alternative for a New Trial is **conditionally denied.**

**IT IS SO ORDERED.**

Dated: November 18, 2014

 S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE